personnel discretion? I'm not sure which accommodation your honor means. Well, take the one about examining the detainees that she was expected to examine. Just take that one as an example. Let's assume for the argument that you chose to accommodate her particular preference in that respect. Would that have been a problem for you? Yes, it would have put the city in a legal conundrum as Judge D'Agostino pointed out in her position. You have Officer Cruz being excused from searching female prisoners because of her sexual orientation and gender presentation. Consider, for example, another female officer who doesn't want to search female prisoners, who's heterosexual, and says, well, I'm female, I'm heterosexual, why am I having to do this work when Officer Cruz is exempt from it? So I think granting the accommodation, so to speak, would actually have put the city in a legal bind. Now, Mr. Josephson, you've heard, we've read about the record that indicates that after years of mostly satisfactory job performance, the notices of discipline against Officer Cruz escalated after she filed her complaint with the EEOC, and that was on August 11, 2016. In your view, does the record contain an explanation of why that is the case? Why after August 11, 2016, the notices of discipline escalated? Well, I guess we should take the threshold question. Is it fair to say that after August 11, 2016, the notices of discipline did increase or were escalated significantly? The answer to that question is no, Your Honor. As previously mentioned, the police department acted with enormous restraint in this situation. The notices of discipline that were closer in time to the original EEOC complaint, it sought to impose minor penalties and were based on conduct that's admitted to have occurred. The only reason the discipline grew was because the number of incidents continued to increase. And if that issue, you know, if first of all... And what do you think is the explanation for that? Or how would you describe why that is so? The answer for why that is so is because Officer Cruz was engaging in this misconduct. Yeah, but what about before her complaint? Was there any evidence that she was engaging in the same conduct throughout, not just four months after the retaliation, not just four months after her complaint, but all along? And they were excusing her, not even disciplining her before the retaliation. Then wouldn't it be more like retaliation if they were all of a sudden deciding, now we're going to file complaints? We're going to do the NODs? The answer is that there's no record of any serious misconduct by Officer Cruz occurring during those prior times. And so the incidents are what they are and happened when they did. And I think when you look at the totality of the incidents and how they increased in number and severity over time, the issue of temporal proximity completely falls away. So your point is that the other side is not able to make out a case that she had been engaging in this conduct for years prior to the complaint and it was not being recognized or not being investigated. But that, according to the record, it all started afterwards. That's correct, Your Honor. Okay, thanks very much. We'll hear from Cruz's counsel for reply. Thank you, Your Honor. Perhaps before you get into your full-fledged reply, I could just ask you, by way of preface, on page two of your reply brief, you have a number of terms that you provide and which identify. Are all of these terms embraced by the relevant statutes or are these terms that you or Officer Cruz prefer to utilize? No, they are embraced, not by the statutory language itself, Your Honor. The statutes they're referring to about limitations on cross-gender searches and supervision. The most important is the Prison Rape Elimination Act, which the city has relied on extensively throughout this litigation. I think what's important, and this is in our reply brief at pages 12 to 15, the Department of Justice is the agency responsible for enacting that, the regulations relevant to that statute. And it said in 2014 that staff members subject to the Prison Rape Elimination Act could have their gender determined based upon stated or identified gender and not biological sex. Therefore, it could not be that the city's claim that treating Officer Cruz according to identified gender, that being non-binary and masculine gender expression, would put it in non-compliance with that statute. The DOJ said a year before she even complained that that was not true. And they could have found that request. Counsel, do you have any evidence of behavior akin to that which gave rise or is said to give rise to disciplinary actions after she complained? Do you have any evidence that Officer Cruz engaged in the same kind of conduct before he complained and was not? No, because Officer Cruz was not engaged in this behavior. She was subjected to excessive scrutiny by every supervisor she had where they trumped up charges to allege discipline. In this case, 60 percent, if you go through the notices of discipline, Your Honor, 60 percent of the alleged incidents of misconduct arise directly from the unlawful discrimination and So I do not believe Officer Cruz was engaged in so-called insubordinate, discourteous behavior such as her employer understood it, either before or after. I think they used that to cover a discriminatory motive that a jury could easily draw that inference from this highly suspicious sequence of events. Thank you. Your Honor, this case, from the beginning, has boiled down to what actually motivated the Ithaca Police Department's desire to terminate Officer Cruz. There is evidence in the record to support a rational jury concluding that it was the product of discrimination and retaliation. This court has held repeatedly that the question of what motivated an employer's desire to fire a worker is a quintessential jury function. Officer Cruz adduced sufficient evidence to have these questions put to the jury and we would respectfully request that this court reverse the grant of summary judgment and remand to the trial court for a trial on the merits. Thank you. Thank you. Thank you very much. We reserve the decision and we'll turn to McQuillan against Hartford. Very well argued by both sides. Hartford Life Thank you very much, Your Honor. Thank you. Thank you, Your Honor. Good morning, Your Honors. My name is John DeHaan. I appear on behalf of the appellant plaintiff, John McQuillan, in this action-seeking review of an insurance carrier's denial of disability benefits under ERISA. Your Honors, this case comes down to two basic issues. The first that need to be evaluated in sequence. The first is whether or not Hartford's April 23, 2020 letter was a benefit determination as required by the regulation 2560.503-1. If it was not a benefit determination, then Mr. McQuillan properly deemed his remedies exhausted on May 26 and filed suit. If, on the other hand, it is determined that it was a benefit determination, the question must then be answered as to whether or not it was an adverse benefit determination or not. Again, if it was an adverse benefit determination, then Mr. McQuillan will have exhausted his administrative remedies and was free to file suit under the regulations and under the plan terms. However, a review of the record here and of the relevant regulations and plan language makes it clear that Hartford's April 23 letter cannot be considered a benefit determination on review as that is defined in the regulation. The letter- In other words, what you're saying is that although it pertains to whether or not there's going to be benefits at some point, a benefit determination is specific in the sense that it actually determines a number, an amount of benefits. Exactly, Your Honor. And this didn't do that. Or at the very least, it has to make a substantive decision as to whether any benefits are going to be paid. Right. There are a lot of different decisions and determinations that Hartford may have to make during the course of an appeal process. Right. Whether to ask for an IME, whether to have a vocational expert review it, whether to ask for more information from the clinic. The weird thing here is that why would Hartford remand it back to the fact finder, instead of, which I think was totally within their power, granting an extension? They could have done that, right? By granting- Wasn't there a possibility of another 45 day extension? Well, they would have to show under Second Circuit law special circumstances for that. Well, they'd have to give notice of it, and they'd have to show reasons for it. But they haven't done any of that. Right. Correct. They never notified plaintiff or plaintiff's counsel that there was any need for extra time during the appeal. And I might add, the appeal was submitted on April 11th. Hartford's letter allegedly determining the appeal was April 23rd. They still had plenty of time left to render an appeal. To render a benefit determination. To render a decision on, a substantive decision on this appeal. But they chose not to. I don't really understand why they would do that. It makes no sense to me either. The simple fact is, the regulations contemplate a claimant, when they appeal an adverse determination at the claim level, submitting not just arguments to the carrier, but also submitting new evidence. So your point is that there was no, under these circumstances, there was nothing to exhaust. There was no duty to exhaust, there wasn't anything to exhaust. They had to presumably make some kind of a determination, a benefit determination. Well, the way plaintiff and counsel below interpreted that April 23rd letter primarily was more of like a status letter. We, where Hartford was advising that it agreed that it's October 2019 letter, the reasons for denying the claim were no longer valid, but it was not awarding benefits. Yeah. Our counsel waited for the remainder of the 45 day appeal period before filing suit to see if Hartford would say, okay, we've finished our substantive review and we're awarding or denying benefits. Hartford did not do anything else. Despite the fact that the April 23rd letter advised that the claims department would contact counsel shortly about proceeding with that review, no contact was made at all. No requests were made, nothing. So when the 45 days ran, counsel deems the claim denied on appeal and filed suit on day 46. Are you claiming here that the rule about, that absolves the plaintiff of having to exhaust if the plan doesn't strictly adhere to the 503-1 requirements? That that comes into play here? Well, it does, because Hartford didn't render a decision substantively on this claim. Arguably, in July of 2020, which is well past any deadline, even if it had been a valid remand to the claims department on April 23rd, the claims department then would have had 45 days from that, which would have been the beginning of June. Hartford blew by every time deadline there was once Mr. McQuillan filed his appeal, which is ironic. I don't think this is directly relevant, but just to understand the total picture. In terms of getting an extension, if they had given a notice and said, we're granting an extension. And the reason we're doing it is because this case is more complicated now because of the new evidence. And we're remanding back for a determination at the first instance level. Would that have been adequate, do you think? Well, I don't think it would be, because every claim is going to be complicated on the, it's always going to be a question of what does the medical evidence say, what are the vocational issues? There's got to be a reason for the extension in the law. And presumably, at some point, there would be a justification for doing that. I would think if all of a sudden, at the last minute, they became aware of new information that altered their thinking, or at least caused them to go back on the fence, that they could get an extension. Perhaps, but that didn't happen here, Your Honor. The appeal, again, was submitted on April 3rd, and Hartford made their, quote, decision less than two weeks later, on April 23rd. They could have looked at the appeal substantively. Another month, basically, in which they could have finalized this. Yeah, they had most of their 45 days still unrun when they did this. Yeah. They just stopped everything at the appeals department and sent it back. And then, when they did make that April 23rd letter, the letter itself says it's not making a substantive decision on the appeal. It's that- And the basic argument is that this whole structure requires a decision to be made on benefits. Yes or no, and how many, within 45 days, or a suit can be brought, unless there are very specific reasons why a delay can be asked for, and then with notification. And then none of that is done. Yes, Your Honor, that is the appellant's position. In fact, I think a plain reading of the regulations mandates that. The regulations specifically contemplate a claim in submitting new evidence on the appeal. It specifically contemplates whoever is charged with deciding that appeal as having the power to consider it and make a substantive decision. In fact, if new evidence comes to light, either because of what the claimant submitted, or Hartford develops new evidence during the appeal process. When Hartford develops new evidence, perhaps they had a record review done or something. They have to, under the appeal regulation, notify the claimant of the new evidence they have and give them a chance to respond before just simply saying, well, based on this, we're not going to deny it. So it's very clear that the regulation expects Hartford to make a substantive decision. It's also clear if you look at M4, which is a definition of an adverse benefit determination, that also clearly would indicate that a substantive decision is required. Because it defines an adverse benefit determination as pretty much anything except a full and it says if benefits are not paid in whole or in part. So if Hartford had said, we're going to approve this claim and pay you for a portion of the benefits he was seeking, but not all of it, he could have filed suit then as well. Here, they said, we agree that our original reason to deny your claim really is no longer valid, but we're still not going to pay you, which is outrageous here. So what is exactly, what is the remedy that you're asking from us? Well, this was, again, decided on a motion to dismiss. So it short-circuited the entire litigation process. There was no judicial review of Hartford's decision. You want to vacate the motion to dismiss so your suit can go forward? Essentially, your honor, yes, and have the courts review Hartford's decision. So it's not a reverse, you want a vacater of the judgment? Yes. Yes. And then a remand for what proceedings, exactly? Tell us what you envisage if you're successful here. Well, if this was remanded to the district court, it would proceed like a typical ERISA disability claim. Plaintiff would seek some relevant discovery on the claim. I would expect, given the way these things go, that would be hotly contested before the district court, and then it would proceed. Why is it that you imagine that that is the case? That just seems to be the case with every ERISA claim I've been in, that the carrier comes in saying there should be no discovery. I've even had carriers come in saying that they should not be subject to the Rule 26 disclosures because it's an administrative procedure being appealed from, even though it's not. It's a contract dispute. This was just a threshold dismissal of the complaint. Yes. And it reinstates the complaint for further. But you're just being pessimistic. I'm sorry? You're just being pessimistic. It may well, it may be that if we hold that you had a right to sue, that you'll lie down and play dead. I didn't catch the last part of that, your honor. You missed the last part? I missed the last part. He asked whether your adversary was going to lie down and play dead, if you will. Well, that would be nice, but I would not expect it. Thanks very much. You've reserved some time. Thank you, your honor. Thank you. Mr. Begos? Good morning, your honors. May it please the court, Patrick Begos for defendant Hartford Life and Accident Insurance Company. The district court here correctly held that strict compliance with section 503-1 does not require a claim administrator to adhere to requirements that are not expressed in the regulation. As this court previously held in the context of letters of credit, a corollary to the rule of strict compliance is that the requirements must be explicit. Counsel, how could it have been any clearer in the language, in the regulation, and in your own profits that you have to give an answer within 45 days as to whether there were benefits or not? How could it have been made any clearer? Hartford Life did make a determination on the administrative appeal as the district court held. It granted the administrative appeal. It overturned- No, but it wasn't a benefit determination. Why was it a benefit determination? It was a determination, your honor. It was a benefit determination saying that the prior denial that there was a failure to- I'm sorry, your honor. Hold on, Judge Calabresi, we can't hear you. Your question is? My question is, how could it have been made any clearer in these regulations that what was required was a decision yes or no on benefits, not a decision to put it off? What language would you have given them to make anything clearer than this was? Your honor, the regulation talks about benefit determinations and benefit determinations on review. The benefit determination that was appealed here was, I would call it a preliminary determination, that the plaintiff, the claimant, had not submitted sufficient proof of loss even to evaluate the merits of his claim. That was a determination. That was a determination. But it wasn't a benefit determination. Well, I think it was a benefit determination because it was administratively appealed. So if that was not a benefit determination, that there was insufficient proof of loss, then there was nothing for the claimant to appeal. Yet the claimant did appeal, chose to appeal instead of providing additional information at the claim level, which was an option that was provided to him, he appealed. And Hartford Life addressed the issue that was on appeal, which was, was there sufficient proof of loss to evaluate the claim? Now the claimant cured the defect. You're saying that's a benefit determination? I'm saying that's a benefit determination under the terms of the regulations, your honor. The Department of Labor has said in its longstanding FAQs regarding these regulations that claim fiduciaries have great flexibility in designing their claim organizations and claim procedures to comply with the regulations. It's my view, and it was the view of the district court, that the determination that was made on appeal was a benefit determination on review because it addressed the issue that was being appealed. It overturned the claim denial, the adverse benefit determination. And then it properly returned the claim to the claim department for the initial review of the evidence that the claimant had submitted for the first time on administrative appeal. Counsel, you cite the Department of Labor, but the department, and I'm not sure we give a deference given the whole situation of our and so on. But the Department of Labor tells us to read this exactly the opposite of yours. The Department of Labor tells the court to use one version of a definition of the word determination that appears in one dictionary that the Department of Labor cites to. As we explain in our brief, the Department of Labor uses the word determination over 100 times in section 503-1. And sometimes it refers to a final determination. Sometimes it refers to a determination that requires further administrative review before it becomes final. And in fact, as we cite in one place in the regulation, the Department of Labor refers to the word determination in the same sentence using both senses. So- What triggered, under your theory, what triggers the 45 day rule? The 45 days to decide the administrative- To decide the issue. The receipt of the administrative appeal by Hartford Life. Coming back. You mean after the remand? I misunderstood. I thought you were talking about the 45 days to decide the appeal. So the regulation is clear that once the appeal is received, then Hartford Life has 45 days to make a determination, which I think it did here. And that can be extended in certain circumstances. But then if it sends it back the way that happened here, under your theory, it would start the whole process over again. And then I guess the 45 day period in terms of the court of first instance or the finder within Hartford, whatever that was, the fact finder, that would start again. That specific question is not before the court right now. I understand that, but that's what would have to happen, right? Yes, I think that that is- So there's no end to the process. I think it's unclear under the regulations, but I think your honor's reading is a fair reading that once it gets remanded, that the clock starts again. And there are- And then it can happen again. It can happen again. The regulations, your honor, there is no evidence in this record that Hartford was interested in delay. In fact, Hartford- This is for the benefit of the person, of the claimant, all these rules. They need a decision. They're looking for benefits. They want to know up or down. That's the situation. No one would deny them that. Not only for the benefit of the claimant, your honor. This is for the benefit of the claimant, for the benefit of the courts, for the benefit of the plans and the plan sponsors. This court and the Supreme Court have established a firm policy of exhaustion of administrative remedies. And that policy, as this court has held- What is the point of the fact that you can ask for an extension under particular circumstances, giving notification, and explaining why, if you can just do it as you would have it done this way without doing any of that? What's the point of having that there at all, if you can do it without bothering? Your honor, the point of the remand here, my view, and I think it's clear from the record, is that Hartford did make its determination well within the 45 days. So the question of whether it could extend the time, whether special circumstances existed to extend the time to decide the appeal didn't apply. And after the claim got remanded, as Judge Walker said, the plausible reading of the regulation is that the clock starts again. But the plaintiff sued before the clock ran after the remand. Well, that's under your theory. I'm not saying that that necessarily is the way it should work. You had another month, virtually, in which to comply with the original 45 days. And get it back up there and have a determination of the actual number of benefits or whether they would be done. As we've argued and as the amicus ACLI has argued, your honor, there is a benefit to the claimant in doing things the way Hartford did it. First of all, I would say, Hartford- Now you're confusing benefit with benefit. There is an advantage to the claimant in doing it the way Hartford did it. Had Hartford considered the merits of the new evidence on appeal and formed a determination up or down whether the claimant was entitled to benefits, the claimant would have had a very limited opportunity to address the new rationale and to address the new evidence. So Hartford Life would have, during the appeal period, presumably extended, would have obtained peer reviews, might have obtained vocational reviews, would have sought evidence from presumably from treating physicians and could have told the time limit entirely while it was seeking that necessary evidence. And then at some short period, it's not specified in the regulations, before issuing an adverse benefit determination on appeal, it would have sent a letter to the claimant and said, here's our rationale for denying your claim. Here's all the new evidence that we've developed on administrative appeal. And the claimant would have a very short period of time to respond to that, to marshal argument in response to that, to argue against that. And then Hartford Life would have issued its adverse benefit determination, and that would have been it. The way Hartford did it, and I think it's the appropriate way and fairer to claimants, is it said, we have this preliminary determination, adverse determination that you didn't submit proof of claim. You've now done it. We've considered that new evidence sufficient to satisfy the proof of claim requirement. We're going to return it to the claim department. If the claim department then issued an adverse benefit determination, the claimant would have had the full 180 days that he could have taken to marshal evidence in response to the adverse claim determination. Submit an appeal, submit argument, and then he would have had the appeal rights. There's no advantage to, he comes into court with, there is no denial of his claim. There is no consideration of the evidence that he submitted on appeal. But counsel, counsel, if we buy your position, and I'm not saying that Hartford, in this case, was trying to delay. But if we buy your position, we are also saying that someone in your position can continue to put off giving a yes, no, or an answer indefinitely. And that, I'm not saying that that would be your motive, but that's a mighty odd way of writing something which is meant to give benefit to people. To allow the person who is supposed to give the benefit to be able to put off doing anything indefinitely. Your Honor, I can't, I've been doing this for a long time. And I can't come up with a particular situation where I could envision a claim fiduciary repeatedly denying a claim and then on appeal remanding for further evaluation. Most of the claims that have an adverse benefit determination happen fairly regularly. There is proof of loss submitted, it's evaluated at the claim level. If there's an adverse benefit determination, there's an appeal and it's- No, I'm not talking to motives. I'm just saying, what is sensible way of reading a regulation? That is, reading a regulation gives one of the parties the capacity to put off everything forever is a difficult reading put it that way. I understand that would be, Your Honor, and I don't believe that the reading that I'm advancing gives Hartford Life or any claim fiduciary the ability to put off a final determination forever. And I would submit, Your Honor, that the purpose of section 503-1 is to flesh out the full and fair review that leads to the exhaustion of administrative remedies that this court has said is vitally important in ERISA litigation. And it allows the district court to receive a full record, a determination that it can consider either on de novo- That may be, but the regulations really do not contemplate this. It's a one-off situation, this kind of case, I mean, this is a rare case. It is, I guess it depends on the law of large numbers, Your Honor. It's not common in litigation, but it is not uncommon in companies that are dealing with thousands and thousands of claims. And I have, this is not in the record, but I represent a number of companies and most, if not all of them, have this kind of process in certain circumstances. And it tends to be, when there is, my words, a claim denial on a preliminary basis. And that would be, like here, you didn't submit proof of loss. It could be an eligibility issue. You weren't employed for long enough to be eligible for coverage under this plan. It could be a pre-existing condition issue where the condition that allegedly is disabling occurred shortly before the claimant became eligible. Those are, I call them preliminary issues. They do come up, and they do lead to this kind of situation where there is an appeal of this preliminary denial. Now, if Your Honors, the way that I believe Your Honors is suggesting the regulation should be read, it would suggest that a company like Hartford, when it finds that there's no proof of loss sufficient to evaluate the claim, should still go ahead and say, and we're denying the claim on the merits. Or when there is a decision that there's a pre-existing condition or there's a lack of eligibility, Hartford should still go ahead and submit to support the disability claim in the event that- Well, Hartford could perfectly well have said, unless you give us more within 45 days, by 45 days we will deny your claim. And you have 23 or however more days there are to give us more. Otherwise, it will be denied then. And then you would be within the time, wouldn't you? Your Honor, I think that would be less fair to the claimant. I think that Hartford's procedure gives the claimant the opportunity, a full opportunity to contest an adverse claim determination. And in the event the final determination is adverse and the claimant decides to sue, it gives the court a full record on which to review that. I think if the court reverses- What you said though is accommodated for in the regs, really. And what you're really doing is saying, the regs have to be interpreted in a different way than might make common sense in terms of what a benefit determination is. I mean, you're saying a benefit determination really is just a determination that has something to do with benefits. It isn't a determination of the actual benefit up or down. And that's what's troubling us. Well, Your Honor, the regs say that in connection with a disability claim, an adverse benefit determination includes rescission of coverage. Now, that's not a decision on benefits. That's a decision that you're not covered at all. So the regs do certainly contemplate that an adverse benefit determination, which is the words that the Department of Labor uses, can apply to issues that are not strictly, are you entitled to benefits, and what amount are those benefits due in? Thank you. Thank you. Thank you very much. Thank you very much. Mr. DeJean. Thank you, Your Honors. First, the issue with proof of loss raised by counsel as a procedural or preliminary type of consideration is not really how these things play out. The policy defines proof of loss in terms of what type of evidence needs to be submitted. But what Hartford here basically said was the evidence he submitted wasn't enough, it didn't convince us. And candidly, Hartford's actions contradict their arguments today. Because if there was some kind of preliminary failure to submit evidence that Hartford needed on the initial claim, Hartford could have asked for it. In fact, they should have asked for it under ERISA. They didn't. Everything they asked Mr. McQuillan to provide, he provided. It was enough for Hartford to approve benefits under the short-term disability claim, with the same definition of disability that's applicable to the elimination period and first 24 months of benefits under the long-term policy. It was enough for Hartford to approve Mr. McQuillan under the New York State disability law benefit, which actually has a slightly more stringent definition of disability. So how could proof of loss sufficient to approve a claim under a more difficult definition of disability suddenly not be enough? But also, again, they didn't ask him to provide anything else. They said here, if you want us to consider your disability claim, complete these forms. And I might add, at this point, he was not represented by council. He was doing this all on his own. He completed the forms, he submitted them. They asked him, sign this authorization. He signed it. He sent it back to them. Then he denied the claim. And although they say proof of loss was insufficient, isn't that really just a way of saying it didn't convince us that you're disabled? It's a substantive decision on disability. Likewise, Hartford is saying, well, we suddenly got the missing information on appeal, so it's fairer to the claimant to send it back to the same party to evaluate who denied it before. But again, that makes no sense whatsoever. If they were really so worried about Mr. McQuillan and being fair to him, when he was unrepresented and then hired a council for the appeal, and council contacted them and said, can we have an additional 90 days to complete our appeal submission, Hartford said no. Then later, council asked, can we at least have another 30 days to complete this? Hartford didn't even take the time to respond to that. So, Mr. McQuillan and council scrambled, they got everything together, they submitted it. Hartford then, in the appeals department, didn't even consider it substantively. They just sent it back to the exact same decision maker who had previously denied it to make another decision on the same claim, which is really the substantive appeal decision. It really is just, and to further highlight this, council makes the argument, well, the appeals department got this new information and they could have done all these grand things, an IME, a peer review, have all these specialists look at it. What happened when it went back to the claims department? There was no further extensive development. They had an employee of Hartford who's a nurse look at it, not even a doctor. And this nurse disagreed with a treating board certified specialist who's recognized as one of the best doctors in his field, in the country if not the world. And a nurse disagreed with Mr. McQuillan's oncologist, and that was the end of it. So this was not about Hartford trying to bend over backwards to give Mr. McQuillan every benefit here. They were bending over backwards to try to not give him any benefits. That was the purpose. All right, thank you very much. We'll reserve the decision, well argued by both, and we're grateful to you.